UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCOS SANTIAGO,<br><br>    Petitioner,<br><br>    v.<br><br>MR. EBBERT,<br><br>    Respondent. | CIVIL ACTION NO. 1:14-cv-01313<br><br>(RAMBO, J.)<br>(SAPORITO, M.J.) |

## REPORT AND RECOMMENDATION

This proceeding was initiated by a *pro se* petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241, signed and dated by the petitioner, Marcos Santiago, on July 1, 2014. (Doc. 1). At the time of filing, Santiago was incarcerated at USP Canaan, located in Wayne County, Pennsylvania.

I. **BACKGROUND**

Santiago is a federal inmate serving a thirty-three year prison sentence for interference with commerce by robbery and possession of a firearm in furtherance of a crime of violence. He is expected to complete his active prison term in January 2032, at which time he will commence a five-year period of supervised release.

On April 12, 2013, Santiago was participating in a religious service

program in the institutional chapel at USP Canaan. During the service, Santiago and some other prisoners began discussing the recent murder of a corrections officer at USP Canaan. Religious Services Assistant Sandra Vallee overheard the conversation.

According to an incident report she later prepared, Vallee heard Santiago say: "Fuck [the deceased corrections officer], he got what he deserved, because he did not treat us like humans. I remember he kicked my door, and I yelled at him. . . . These Officers need to learn or they will get it too." (Doc. 11-1, at 30). Vallee reported that she then entered the chapel and told the inmates to stop talking, to which Santiago replied: "I have the right to talk!" (*Id.*). Vallee then requested that a corrections officer escort Santiago out of the chapel. (*Id.*).

Vallee completed the incident report about half-an-hour later. (*Id.*) Her report charged Santiago with: (1) Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (most like Threatening Another with Bodily Harm); and (2) Insolence Towards a Staff Member. (*Id.* at 30; *see also id.* at 36). It was then investigated by Lieutenant T. Galella, who concluded that Vallee's incident report was true. (*Id.* at 31). Galella delivered a copy of the incident report and

investigation report to Santiago later that same evening. (*Id.* at 30–31).

Santiago appeared for a hearing before the Unit Discipline Committee ("UDC") on April 15, 2013. (*Id.* at 30). Santiago was provided with an opportunity to provide the committee with a statement in response to the charges. Santiago reportedly stated: "It's a lie. I said some of it, but [not] that crazy part." (*Id.* at 32). The UDC found the charge to be warranted based on Vallee's statement and referred the incident report to a Disciplinary Hearing Officer ("DHO") for further proceedings and possible sanctions. (*Id.* at 30, 32).

Santiago was given written notice of his disciplinary hearing at the UDC hearing, but refused to sign an acknowledgment form. (*Id.* at 33–35). Santiago requested that two inmates who were present in the chapel, Pardeep Kumar and James Cherry, be called to testify on his behalf, but he declined the assistance of a staff representative. (*Id.* at 33).

Santiago appeared before the DHO for a disciplinary hearing on April 22, 2013. (*Id.* at 36–39). Santiago denied the charges against him. (*Id.* at 36). He made the following statement on his own behalf to the DHO:

> [Vallee] took truths and mixed it with lies. I sent an
> email to my brother [stating that] he [the deceased

corrections officer] didn't deserve to die. It's on the computer. We were in there. We weren't saying anything bad about the guy, She said don't talk about it. She called the officers. They came and got me. What she wrote is crazy.

(*Id*. at 37). When questioned by the DHO, Santiago admitted that he "was in Hindu service," he confirmed that inmates Kumar and Cherry were present for the religious service as well, and he admitted that "I did say we have a right to talk." (*Id*.). Santiago raised no procedural issues, and he presented no documentary evidence for the DHO's consideration. (*Id*.).

The DHO received testimony from the two witnesses requested by Santiago. The DHO recorded the substance of their testimony in his report:

> [Inmate James Cherry] appeared and testified for the record[:] "I don't remember [Santiago] stating that. We discussed it in our Hindu circle. They did program review and then never spoke to me. [Santiago] said the [deceased corrections officer] kicked his door.[] We were in the same unit during lock-down. [Vallee] was the only one swearing."
>
> [Inmate Pardeep Kumar] also appeared and testified for the record: "[Santiago] didn't say anything like that. Nobody deserves that. After forty days we just talked. . . . We talked about [how] the incident . . . is no good." [Kumar] stated SANTIAGO never spoke during the Hindu service on April 12, 2013, and stated "[Santiago] was reading a book. I think he was reading a bible."

(*Id*.). In addition to Santiago's statement and the testimony of these two

- 4 -

witnesses, the DHO considered Vallee's written incident report and Galella's written investigation report. (*Id.*).

Ultimately, on May 1, 2013, the DHO issued a written decision summarizing the specific evidence considered and concluding that:

> based on the greater weight of the evidence[,] the prohibited act[] of Threatening Another with Bodily Harm (Code 203) was committed. The equivalent and lesser series charges of Conduct Which Disrupts or Interferes with the Security and Orderly Running of the Institution or the Bureau of Prisons (Code 299) and Insolence Towards a Staff Member (Code 312)[] were expunged as the elements of [Santiago's] actions most satisf[y] that of Code 203.

(*Id.* at 38). The DHO sanctioned Santiago with disallowance of 27 days of good conduct time, forfeiture of 60-days of non-vested good conduct time, 60 days of disciplinary segregation, a monetary fine of $7, impoundment of personal property (other than religious and legal materials) for two months, and loss of commissary, TRULINCS, and telephone privileges for 18 months. (*Id.* at 39). The written decision advised Santiago of his appeal rights, and a copy was delivered to him on May 2, 2013. (*Id.*).

Santiago exhausted his administrative remedies, unsuccessfully

appealing this DHO decision to the regional and central BOP offices.[1] (*Id.* at 28–29). He filed the instant federal habeas petition, together with a supporting memorandum, on July 9, 2014. (Doc. 1; Doc. 2). The respondent filed his answer to the petition on August 27, 2014. (Doc. 11).  Santiago filed a reply to the answer on September 8, 2014. (Doc. 13). The matter is now ripe for decision.

## II. DISCUSSION

In his § 2241 petition,[2] Santiago claims that he was deprived of his due process rights by prison disciplinary proceedings that were based on a false incident report and which resulted in a loss of good conduct time, as well as other sanctions.

---

[1] Santiago's regional appeal was denied. (Doc. 11-1, at 28). He appealed that denial to the central office but never received a response; BOP records submitted by the respondent suggest that Santiago's disciplinary appeal was received by the central office but never decided. (Doc. 2, at 3; Doc. 11-1, at 29). The respondent has conceded that Santiago has exhausted available administrative remedies. (Doc. 11, at 1 n.1). *See generally Small v. Camden County*, 728 F.3d 265, 273 (3d Cir. 2013) ("Administrative remedies are exhausted when prison officials fail to timely respond to a properly filed [disciplinary appeal].") (alteration omitted).

[2] "Section 2241 is the appropriate vehicle for constitutional claims when a prison disciplinary proceeding results in the loss of good time credits." *Pappas v. Allenwood USP*, 548 Fed. App'x 31, 32 (3d Cir. 2013) (per curiam).

A federal prisoner has a constitutionally protected liberty interest in good time credit. *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991); *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1417 (M.D. Pa. 1994). But "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556; *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992); *Von Kahl*, 855 F. Supp. at 1417–18. Rather, in the context of a prison disciplinary hearing that may result in the loss of good time credits, due process requires that an inmate must receive: (1) written notice of the charges at least 24 hours prior to the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) an opportunity to receive assistance from a staff representative or a fellow inmate if the charged inmate is illiterate or if complex issues are involved; and (4) a written decision by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563–70; *Griffin*, 969 F.2d at 19; *Von Kahl*, 855 F. Supp. at 1418. In addition, due process requires that a prison disciplinary decision implicating an inmate's liberty interest must be supported by at

least "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985); *Elkin v. Fauver*, 969 F.2d 48, 51 (3d Cir. 1992); *Griffin*, 969 F.2d at 19; *Von Kahl*, 855 F. Supp. at 1418.

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [factfinder].

*Hill*, 472 U.S. at 455–56.

Here, Santiago does not allege that his disciplinary proceedings were procedurally defective. The record clearly establishes that he received written notice of the charges against him more than 24 hours prior to his disciplinary hearing. Santiago was clearly given the opportunity to call witnesses and present documentary evidence in his defense—the DHO received testimony from both of the two inmate-witnesses requested by Santiago, and Santiago proffered no documentary evidence for the DHO's consideration.[3] Santiago was given the opportunity to request the

---

[3] In his briefs, Santiago alludes to the possibility that an audio recording may exist of events as they transpired in the chapel that day. He does not, however, claim that he requested disclosure of any such recording prior to the hearing, nor that he requested that it be considered by the DHO as documentary evidence at his disciplinary hearing.

assistance of a staff representative but expressly declined staff assistance. Finally, the record clearly demonstrates that Santiago received a written disciplinary decision from the DHO, describing the evidence relied upon and clearly stating the DHO's factual findings and his reasons for imposing disciplinary sanctions.

Santiago's challenge boils down to a claim that the DHO erred by crediting Vallee's highly specific statements in the written incident report over the testimony of Santiago and two other inmates that he did not say what she said he did in the incident report. But under the *Hill* "some evidence" standard, this Court is not permitted to independently assess witness credibility or re-weigh the evidence; rather, the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the [DHO]." *See Hill*, 472 U.S. at 455–56. Notwithstanding the fact that her account was disputed by Santiago and two other inmates, the DHO could have reasonably found Vallee's statement to be credible, particularly given its specificity and, as the DHO expressly noted,[4] the absence of any known reason for her to provide false

---

[4] In his report, the DHO expressly stated that he would "afford greater weight to the reporting staff member as she derives no known
*(continued on next page)*

information. *Cf. Pappas v. Allenwood USP*, 548 Fed. App'x 31, 33 (3d Cir. 2013) (per curiam). Having found Vallee's written statement credible, the disciplinary decision was clearly supported by at least "some evidence" in the record. *See id.*

Accordingly, Santiago's habeas challenge to these disciplinary proceedings and the related sanctions should be denied because there is "evidence in the record that could support the conclusion reached by the [DHO]." *See Hill*, 472 U.S. at 455–56.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition (Doc. 1) be **DENIED**.

**Dated: July 24, 2015**                    *s/ Joseph F. Saporito, Jr.*
                                            **JOSEPH F. SAPORITO, JR.**
                                            **United States Magistrate Judge**

---

benefit by providing false information and has a legal obligation to present accurate factual information." (Doc. 11-1, at 38).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCOS SANTIAGO, | |
| Petitioner, | CIVIL ACTION NO. 1:14-cv-01313 |
| v. | (RAMBO, J.)<br>(SAPORITO, M.J.) |
| MR. EBBERT, | |
| Respondent. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated July 24, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 24, 2015**       *s/ Joseph F. Saporito, Jr.*
                               **JOSEPH F. SAPORITO, JR.**
                               **United States Magistrate Judge**